**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| Plaintiff, | ‖ | No. CR13-3010-MWB |
| vs. | ‖ | **REPORT AND RECOMMENDATION** |
| | ‖ | **ON MOTION TO SUPPRESS** |
| RYAN HANSEN, | ‖ | |
| Defendant. | ‖ | |

_____

*TABLE OF CONTENTS*

*INTRODUCTION*.................................................................. 2

*SUMMARY OF EVIDENCE*................................................... 3

*ANALYSIS*......................................................................... 5
    I.    *Iowa Law Issues* ....................................................... 6
        A.    *Was The GPS Device Installed Before The First Warrant Expired?*............................................... 6
        B.    *Was Radmaker Authorized To Apply For A Warrant To Install A GPS Device?*................................... 7
        C.    *Did The Warrant Authorize A Search Outside The Issuing County?* ................................................ 10
        D.    *Does Noncompliance With Iowa Law Require Suppression Of Evidence Obtained As A Result Of The GPS Warrants?* ..... 12
    II.    *Fourth Amendment Issues* ...................................... 16
    III.    *Good Faith* ........................................................... 21

*CONCLUSION* .................................................................. 23

## *INTRODUCTION*

Defendant Ryan Hansen is charged by indictment with one count of conspiracy to distribute methamphetamine and one count of possession with intent to distribute methamphetamine. He has filed a motion (Doc. No. 9) to suppress evidence. Plaintiff (the Government) has filed a resistance (Doc. No. 18). The Trial Management Order (Doc. No. 5) assigns motions to suppress to me to conduct any necessary evidentiary hearings and to prepare reports on, and recommended dispositions of, those motions.

I conducted a hearing on June 5, 2013. Defendant appeared in person and with his attorney, Alan Stoler. Assistant United States Attorney Shawn Wehde appeared for the Government. The Government presented testimony from Nick Larson, Chief Deputy Sheriff for Kossuth County, Iowa, and Jacob Radmaker, Deputy Sheriff for Kossuth County, Iowa. The Government also offered the following exhibits into evidence:

> *Government Exhibit 1*: Application for Search Warrant, dated January 8, 2013, with attachments (filed herein as Document Number 18-2).

> *Government Exhibit 2*: Application for Search Warrant, dated March 4, 2013, with attachments (filed herein as Document Number 18-3).

I received both exhibits with no objection from defendant. Defendant presented no evidence but requested that I take judicial notice of certain sections of the Code of Iowa. I granted that request with no objection from the Government.

At the conclusion of the hearing I established a schedule for additional written arguments from the parties. Hansen submitted a supplemental brief (Doc. No. 23) on June 11, 2013. The Government filed its own supplement (Doc. No. 24) on June 14, 2013. Hansen filed a reply (Doc. No. 25) to the Government's supplement on June 17, 2013. The motion is now fully submitted. For the reasons set forth herein, I recommend that it be denied.

## SUMMARY OF EVIDENCE[1]

On December 17, 2012, Deputy Jacob Radmaker received information from a confidential informant. The informant stated Mykey Wolf of Algona, Iowa, was going to buy an ounce of crystal methamphetamine ("ice") for $2000 to $2200 from a male coming from Minnesota and that the transaction was to take place at Wolf's residence. The informant stated the male coming from Minnesota previously lived in Kossuth County, used to drive a white Dodge Durango and recently was released from prison.

On December 19, 2012, the informant told Radmaker the name of the male coming from Minnesota was Ryan and that Ryan was driving a white Chrysler 300 with 22-inch rims. The informant stated Ryan drove to the Wolf residence from Minnesota in the Chrysler, arrived around 04:30 on December 19, 2012, and sold Wolf an ounce of "ice" for $2300. The informant also stated Ryan usually carries six to ten ounces of "ice" when he comes down from Minnesota and was selling it all over.

On December 28, 2012, the informant forwarded to Radmaker a text that, according to the informant, had been sent to the informant by Ryan. The text stated: "Well its been 2300 for an O so 9'bs for 2500." Radmaker interpreted this to be a statement that the price for nine "8-balls" of methamphetamine would be $2500.

Radmaker compared information from the informant with other information known to or discovered by Radmaker to conclude that the suspected drug dealer was Ryan Hansen. Hansen is from the Algona area, previously drove a white Dodge Durango Iowa license plate 453BNS, had been recently released from prison and was then driving a white 2007 Chrysler 300 with 22-inch rims Iowa license plate 478ZZC.

---

[1] This summary is based on the testimony and exhibits that have been received with regard to the motion to suppress. During the hearing, defendant objected to any testimony from either witness that went beyond the four corners of the affidavits that were submitted in support of the search warrant applications at issue in this case. I received the testimony subject to the objection. I find that the objection has merit only on the issue of whether probable cause existed to support issuance of the warrants at issue in this case. In considering that issue, I will rely solely on the written materials presented to the issuing magistrate and the endorsements made by that magistrate concerning additional sworn, oral testimony.

Radmaker testified that Hansen's vehicle is very unique because of the large rims and other aftermarket modifications. Indeed, Radmaker stated that there is no other vehicle like it in the area.

Radmaker and Larson determined that installing and monitoring a GPS device on Hansen's vehicle would be useful to their investigation. The Kossuth County Sheriff's Office had never previously sought a search warrant for authorization to install and monitor a GPS device. Larson testified that this situation presented the office's first opportunity to use such a device after the United States Supreme Court's decision in *United States v. Jones*.[2]

On January 8, 2013, Radmaker submitted an application (including an affidavit) for a search warrant to install and deploy a GPS tracker on Ryan Hansen's vehicle (described throughout as a white 2007 Chrysler 300 with Iowa license plate #478ZZC). *See* Ex. 1. This application will be referred to herein as the "first application." On the same day, an Iowa judicial magistrate approved the search warrant application and issued the requested warrant (hereafter the "initial GPS warrant"). The magistrate documented, by an endorsement, sworn additional oral testimony from Radmaker. *Id.* On either January 18 or 19, 2013 (the date of installation is disputed), Larson installed the GPS tracking device on the subject vehicle. From January through March 4, 2013, Radmaker monitored and documented receipt of data from the GPS tracking device.

On March 4, 2013, Radmaker submitted another application (again including an affidavit) for a search warrant to extend the installation and deployment of the GPS tracker on Ryan Hansen's vehicle. *See* Ex. 2. This application will be referred to herein as the "second application." On the same day, the same magistrate approved the second application and issued the requested warrant (hereafter the "renewed GPS warrant"). The magistrate again documented, by an endorsement, sworn additional

---

[2] 132 S. Ct. 945 (2012) (holding that installation of a GPS device on a vehicle is a "search" within the meaning of the Fourth Amendment to the United States Constitution).

oral testimony from Radmaker. *Id.* From March 4, 2013, through March 16, 2013, Radmaker monitored and documented receipt of data from the installed GPS tracking device on the requested vehicle.

Both applications, including the affidavits, described the vehicle at issue as a white 2007 Chrysler 300, IA license # 478ZZC. The first application also included a photograph of the vehicle, which Radmaker obtained from Hansen's Facebook page. However, both warrants contain an internal inconsistency concerning the license plate number. The first paragraph of each states there is proof that said vehicle (with the license plate number noted above) has been or will be used in furtherance of drug trafficking. However, the second paragraph of each authorizes installation of the GPS tracker on a vehicle with that same description but with Iowa license plate number 150YLC. *See* Exs. 1 and 2. Radmaker testified that he made this error while drafting the proposed warrants and that license plate number 150YLC has nothing to do with this investigation.

On March 16, 2013, several law enforcement officers conducted a traffic stop of Ryan Hansen's vehicle, locating and seizing evidence. After being advised of his *Miranda* rights, Hansen allegedly made incriminating statements.

## ANALYSIS

Hansen raises the following arguments:

1. Installation of the GPS devices was unlawful because it occurred after the expiration of the initial warrant authorizing that installation.

2. Both warrants were unlawful because Radmaker was not authorized by Iowa law to apply for the warrants.

3. Under Iowa law, the warrants could not authorize the gathering of information outside of Kossuth County, where they were issued.

4.      There was no probable cause to support issuance of the
        warrants.

5.      Law enforcement officers could not have acted in good faith
        reliance on the warrants, pursuant to *United States v. Leon*,
        468 U.S. 897 (1984).

Doc. No. 9-1 at 2-7.   Because the first three arguments raise issues concerning
compliance with Iowa law, I will start by addressing them and will then consider the
effect, if any, of noncompliance.   I will then address the issues of probable cause and
good faith.

## I.      *Iowa Law Issues*

### A.      *Was The GPS Device Installed Before The First Warrant Expired?*

The initial GPS warrant was issued January 8, 2013.  Ex. 1.  Under Iowa law, a
search warrant becomes void if not executed within ten days.  *See* Iowa Code § 808.8
("A search warrant shall be executed within ten days from its date; failure to execute
within that period shall void the warrant.").   Hansen notes that Radmaker's second
affidavit (the one submitted while applying for the renewed GPS warrant) stated that the
GPS device was placed on Hansen's vehicle on January 19, 2013, eleven days after the
initial GPS warrant was issued.  Ex. 2.  Thus, Hansen argues, the initial GPS warrant
had expired, and was void, before the GPS device was installed.

The Government does not dispute Iowa's "ten day" rule.  However, it presented
evidence that the date contained in Radmaker's second affidavit was incorrect and that
the actual date of installation was January 18, 2013.  Larson testified that he placed the
GPS device on Hansen's vehicle and that he did so on January 18, 2013, while the
vehicle was parked at the Sheriff's office.  According to the return of the renewed GPS
warrant, Hansen reported to the Sheriff's office for a urinalysis test on January 18 at
about 6:30 p.m.  Ex. 2 at 15, 17.  The same return also includes information about
Hansen's travels beginning on January 18.  *Id.* at 17.

6

Radmaker testified that January 18 is the correct date of installation and that he simply made an error by reporting the date as January 19 in his second affidavit. He further testified that the tracking data generated by the GPS device dates back to January 18, 2013, and that no such data could have been generated if the device was not already installed. Based on all of this evidence, and my opportunity to assess the credibility of both witnesses, I find that January 18, 2013, was the date of installation. As such, I find that the initial GPS warrant was executed within ten days of its issuance. I therefore reject Hansen's argument that the warrant expired, and became void, before installation occurred.

### B.    Was Radmaker Authorized To Apply For A Warrant To Install A GPS Device?

The Iowa Code describes the circumstances under which an Iowa judicial officer may authorize the installation of a GPS device:

> A special state agent may make application to a judicial officer for the issuance of a search warrant to authorize the placement, tracking, or monitoring of a global positioning device, supported by a peace officer's oath or affirmation, which includes facts, information, and circumstances tending to establish sufficient grounds for granting the special state agent's application, and probable cause for believing the grounds exist. Upon a finding of probable cause to issue such a warrant, the judicial officer shall issue a warrant, signed by the judicial officer with the judicial officer's name of office, directed to any peace officer, commanding that the peace officer place, track, or monitor the global positioning device.

Iowa Code § 808B.5(12). This provision is contained in a chapter of the Iowa Code entitled "Interception of Communications." *See* Iowa Code chapter 808B. Within that chapter, "special state agent" is defined as "a sworn peace officer member of the department of public safety." *See* Iowa Code § 808B.1(10).

Radmaker is a sworn peace officer but he is not a member of the Iowa Department of Public Safety. Instead, he is employed as a Deputy Sheriff by the

Kossuth County Sheriff's Office. *See* Exs. 1 and 2. He acknowledged during the hearing that he is not a "special state agent."

Nonetheless, the Government argues that Radmaker was authorized to apply for issuance of the GPS-installation warrant because Section 808B.5(12) states that a special state agent "may" apply for such a warrant. The Government asks me to interpret the word "may" to mean that special state agents are not the only individuals who are authorized to apply for warrants of this nature. In other words (supposedly), while special state agents "may" apply, so too "may" others. The Government also argues that because any law enforcement officer may apply for a regular search warrant under Iowa law, the same authorization must apply to warrants governed by Section 808B.5(12). I reject the Government's arguments entirely. Indeed, a simple reading of the relevant statutes demonstrates that this is not even a close call.

Chapter 808B authorizes orders and warrants that go beyond traditional "search-for-and-seize property" warrants. It describes the procedures necessary to authorize the interception of communications, the installation of pen registers or trap and trace devices, and the installation of GPS tracking devices. *See* Iowa Code §§ 808B.3, 808B.5, 808B.11. While any "person" may apply for a traditional search warrant, *see* Iowa Code § 808.3, the Iowa Legislature placed express limits on the scope of permissible applicants for the warrants and orders described in Chapter 808B. For example, the Iowa Attorney General must authorize and prepare any application for an order allowing the interception of wire, oral or electronic communications. *See* Iowa Code § 808B.3. The application must then be made either by the Attorney General or by a County Attorney acting at his or her request. *Id.* That application must, *inter alia*, identify the special state agent who requested the application, as well as the supervisory officer who reviewed and approved the request. Iowa Code § 808B.5(1)(a).

Similarly, an application for an order authorizing a pen register or trap and trace device must be made by "a prosecuting attorney." Iowa Code § 808B.11(1). An investigation utilizing such a device may be conducted only by a special state agent. *Id.*

As noted above, in describing the procedures for obtaining a warrant for the placement of a GPS device, the Iowa Legislature stated that a special state agent may make the application. Iowa Code § 808B.5(12). No other class or scope of individuals is identified as being authorized to make such an application. However, within the same subsection, the Legislature used the term "peace officer" to describe (a) individuals whose affidavits may support an application and (b) individuals who may "place, track, or monitor" the GPS device. *Id.*

Given this statutory framework, Radmaker, a peace officer but not a special state agent, was not authorized by Iowa law to apply for a GPS warrant. The Iowa Supreme Court has stated:

> The court's goal when construing a statute is to determine legislative intent. *NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 39 (Iowa 2012). If the statute's language is plain and unambiguous, we will look no further. *Estate of Ryan v. Heritage Trails Assocs., Inc.*, 745 N.W.2d 724, 730 (Iowa 2008). A statute's meaning is ambiguous if reasonable persons can disagree on its meaning. *State v. Wiederien*, 709 N.W.2d 538, 541 (Iowa 2006).

*Sierra Club Iowa Chapter v. Iowa Dept. of Transp.*, No. 11-1979, 2013 WL 2450143, at *7 (Iowa June 7, 2013). Here, the relevant statutory language is plain and its meaning clear. A "special state agent" is a sworn peace officer who is also a member of the Iowa Department of Public Safety. Iowa Code § 808B.1(10). Only "a special state agent" is listed as being an authorized applicant for a GPS warrant. Iowa Code § 808B.5(12). While the statute goes on to state that the application may be *supported by* the affidavit of any peace officer, it nonetheless refers to that application as "the special state agent's application." *Id.* Once issued, the warrant can be directed to and executed by "any peace officer." *Id.*

The Legislature made clear distinctions between special state agents and peace officers. Special state agents are a subset of the broader category of peace officers. Only special state agents may apply for a GPS warrant. It is undisputed that both applications at issue in this case were made by Radmaker and that Radmaker was not a "special state agent." He was not authorized to make the applications. As such, I find that both applications were made, and both warrants were issued, in violation of Iowa Code § 808.5(12).[3] I will address the impact of this finding in section I(D), *infra*.

### C.   Did The Warrant Authorize A Search Outside The Issuing County?

Hansen points out that the GPS device utilized in this case gathered information from outside the boundaries of Kossuth County, Iowa, where the warrant issued. Indeed, he notes that the device gathered data from beyond the borders of Iowa, as well, as it documented travels into Minnesota. Hansen states that he "is unaware of any state statute authorizing a warrant to obtain information or property not within the jurisdiction of the authorizing judicial officer." Doc. No. 9-1 at 4.

Hansen's argument is contrary to Iowa law. In *State v. Groff*, 323 N.W.2d 204 (Iowa 1982), the Iowa Supreme Court held that Iowa's state court magistrates "have the authority to issue search warrants for property located outside the county of their appointment." *Id.* at 213. Referring to the plain language of the applicable statute, the Court held that a magistrate may direct a search warrant to "any peace officer" and

---

[3] While this conclusion is obvious based on the plain language of the relevant statutes, I agree with Hansen that it is also supported by a bill that was introduced during the most-recent session of the Iowa Legislature. The "explanation" section of Iowa House File 475 notes that current law "only allows a special state agent, defined in Code section 808B.1 as a peace officer of the department of public safety," to apply for a GPS warrant. *See* Iowa H.F. 475 (introduced March 7, 2013). The bill would expand the scope of permissible applicants to any "peace officer." *Id.* at § 2. While the bill has not been enacted into law, it further undercuts the Government's misguided effort to argue that Radmaker was authorized to apply for the GPS warrants at issue.

may command that peace officer to "search the named person, place, or thing within the state for the property specified." *Id.* (citing Iowa Code § 808.4 (1979)).

As I discussed above, GPS warrants are governed by chapter 808B, not chapter 808. However, on this issue the distinction is not helpful to Hansen. While section 808B.5(12) differs from section 808.4 in that it narrows the class of permissible applicants for GPS warrants, it does not establish narrow geographic limits concerning the deployment of GPS devices. Like section 808.4, section 808B.5(12) provides that the issuing magistrate shall issue the warrant to "any peace officer." Iowa Code § 808B.5(12). It then permits that peace officer to "place, track, or monitor" the GPS device. *Id.* It does not state that such monitoring must stop the moment the vehicle leaves the county or, for that matter, the state. Indeed, and unlike section 808.4, section 808B.5(12) does not contain the phrase "within the state." *Compare* Iowa Code §§ 808.4 and 808B.5(12).

If the Iowa Legislature intended to restrict GPS monitoring to either the state of Iowa or the county in which the GPS warrant was issued, it easily could have included that restriction in the authorizing statute. It did not do so. I hold that once any judicial officer in Iowa issues a GPS warrant pursuant to section 808B.5(12), that warrant may be executed by any peace officer in Iowa by installing the device while the vehicle is in any county. I further hold that once the device is installed by a peace officer in Iowa, it may be monitored to collect data regardless of whether the target vehicle leaves the county of issuance or the state of Iowa.

Here, both GPS warrants were issued in Kossuth County and the GPS device was installed in that county. The fact that the device gathered information from beyond Kossuth County, and even beyond the state of Iowa, does not offend Iowa law.[4]

---

[4] As I noted in the Summary of Evidence, *supra,* both GPS warrants include one reference to an inaccurate license plate number. While Hansen makes note of the errors in his supporting papers, he does not argue that they justify the suppression of any evidence. In any event, I find that these were inadvertent, typographical errors that do not impact any of the legal issues that are relevant to the disposition of Hansen's motion.

**D.      Does Noncompliance With Iowa Law Require Suppression Of Evidence Obtained As A Result Of The GPS Warrants?**

As discussed above, Radmaker was not a "special state agent" and, therefore, was not authorized to apply for the GPS warrants that were issued in this case. The Government argues, however, that this conclusion is irrelevant. According to the Government, for purposes of this prosecution the validity of the search is governed by the Fourth Amendment, not by Iowa law.

The Government is correct. The Eighth Circuit Court of Appeals has made it very clear that in a federal prosecution, a search conducted by state authorities is evaluated under the Fourth Amendment, not under state law. For example, in *United States v. Cote*, 569 F.3d 391 (8th Cir. 2009), the defendant argued that an Iowa state court judge violated Iowa law in failing to record supplemental testimony presented in support of a search warrant application. *Id.* at 393. The court determined that the alleged violation was irrelevant in a federal prosecution:

> Iowa Code § 808.3, which requires an abstract of witness testimony that serves as a basis for granting a warrant application, is also inapplicable in Cote's case. "In a federal prosecution, we evaluate a challenge to a search conducted by state authorities under federal Fourth Amendment standards." *United States v. Bieri*, 21 F.3d 811, 816 (8th Cir.1994) (citing *United States v. Johnson*, 12 F.3d 827, 835 (8th Cir.1994), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)). "'[E]vidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution because state law was violated.'" *Id.* (quoting *United States v. Moore*, 956 F.2d 843, 847 (8th Cir.1992)). Because we conclude the warrant in Cote's case did not violate the Fourth Amendment, we need not determine whether Judge Spande's failure to record Officer Fort's supplementary testimony constituted a violation of Iowa law.

*Id.*

In *United States v. Koch*, 625 F.3d 470 (8th Cir. 2010), the defendant argued that evidence resulting from the search of a flash drive should have been suppressed

because the search took place more than ten days after an Iowa state court's issuance of a search warrant. *Id.* at 476. The defendant (like Hansen, here) relied on Iowa Code § 808.8, which provides that a search warrant becomes invalid if not executed within ten days. In rejecting the argument, the Court of Appeals first found that the warrant had been executed within ten days. *Id.* It then then stated:

> Iowa Code § 808.8 would not control in any event because the legality of a search and seizure in a federal prosecution is determined by federal law even if the persons conducting a search were state actors. *United States v. Maholy*, 1 F.3d 718, 721 (8th Cir.1993).

*Id.* n.3.

In *Johnson* (cited, *supra,* in the quotation from *Cote*), the defendant alleged that a state court search warrant was invalid because the officer who applied for and executed that warrant was not authorized to do so. *United States v. Johnson*, 12 F.3d 827, 835 (8th Cir. 1994), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137 (1995). Again, the Eighth Circuit Court of Appeals found that this allegation, even if true, was "not an issue here." *Id.* Instead, the search was "evaluated by application of federal Fourth Amendment standards." *Id.*

Hansen, recognizing this problem, argues that this situation is different because the violation of Iowa law was not simply a "technical defect." Instead, he contends that the violation was so egregious and prejudicial that it cannot be overlooked. He relies primarily on *United States v. Freeman,* 897 F.2d 346 (8th Cir. 1990), a case in which an agent of the Missouri Department of Revenue applied for and obtained a search warrant despite not being a "peace officer" empowered by state law to do so. *Id.* at 346-47. On his appeal from the trial court's denial of his motion to suppress the resulting evidence, the defendant argued that the warrant was invalid because the agent was not authorized to apply for it. *Id.* at 348.

The Eighth Circuit Court of Appeals affirmed the trial court's denial of the motion to suppress. *Id.* at 350. The court began its analysis by noting that it had

"found no case" supporting application of the exclusionary rule "to procedural violations which do not implicate the constitutional values of probable cause or description with particularity of the place to be searched and items to be seized." *Id.* However, the court proceeded to discuss, and apply, a "fundamental/nonfundamental approach" to the defendant's request for suppression of the evidence. *Id.* at 349-50. The court noted that it had applied this approach to situations involving warrants obtained in violation of Federal Rule of Criminal Procedure 41 and quoted with approval the following description of the approach:

> Only a "fundamental" violation of Rule 41 requires automatic suppression, and a violation is "fundamental" only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards. Violations of Rule 41 which do not arise to constitutional error are classified as "non-fundamental." "Non-fundamental" noncompliance with Rule 41 requires suppression only where:
>
> '(1)    there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or
>
> (2)    there is evidence of intentional and deliberate disregard of a provision in the Rule.'

*Id.* at 350 (quoting *United States v. Luk,* 859 F.2d 667, 671 (9th Cir. 1988) (quoting, in turn, *United States v. Vasser*, 648 F.2d 507, 510 (9th Cir. 1980), *cert. denied*, 450 U.S. 928 (1981))). Simply put, *Freeman* differs a bit from *Cote, Koch* and *Johnson* in holding that there may be circumstances in which law enforcement's failure to comply with state law *is* relevant, and *does* require the exclusion of evidence, even if the search was not unconstitutional under traditional Fourth Amendment standards. Those circumstances exist if (a) the noncompliance resulted in prejudice or (b) the noncompliance was intentional and deliberate. *Id.*

The record here does not support either finding. "Prejudice" means the search might not have occurred, or would not have been so abrasive, absent the violation.

*Freeman*, 897 F.2d at 349. There is no evidence that Radmaker and Larson would have simply given up, and abandoned their plan to obtain a GPS warrant, had they realized that Iowa law required the involvement of the Iowa Department of Public Safety. As I will discuss further below, they had probable cause to obtain such a warrant. Further, I find that they sincerely believed the GPS device was likely to lead to the discovery of evidence that Hansen was involved with drug trafficking. There is no evidence that obtaining the assistance of the Iowa Department of Public Safety would have been so onerous or time-consuming that Radmaker and Larson would have declined to seek that assistance. As such, I find that the search in this case likely would have occurred, to the same extent and degree, even if Radmaker and Larson had been aware that a special state agent was required to apply for a GPS warrant.

Likewise, there is no evidence that Radmaker acted in intentional and deliberate disregard of Iowa Code section 808B.5(12) when he applied for the GPS warrants. Indeed, it is undisputed that this situation presented the sheriff's department's first opportunity to apply for a GPS warrant after the United States Supreme Court held, in January 2012, that the installation and monitoring of a GPS device is a "search" under the Fourth Amendment. *See United States v. Jones*, 132 S. Ct. 945, 949 (2012). Larson testified that while the department had utilized GPS devices prior to *Jones,* it had not applied for warrants to do so. All of the evidence about the warrants in this case, including the form of the applications themselves, show that Radmaker assumed this situation was governed by the same rules and requirements that apply to regular search warrants. There is no evidence that either Radmaker or Larson knew that only a special state agent could apply for a GPS warrant and deliberately chose to disregard that requirement.

This conclusion is consistent with *Freeman*. Indeed, the relevant facts are remarkably similar. In both cases, a law enforcement officer applied for and obtained a search warrant despite not falling within class of persons authorized to do so by the applicable state statute. Like the magistrate judge in *Freeman,* I find that the officer at

issue (in this case, Radmaker) believed he had authority to do so. And, as in *Freeman*, Hansen suffered no prejudice "in the sense that the search might not have occurred or been so abrasive had the procedural requirements been followed." *Id.* at 350.

In short, the non-fundamental violations of Iowa law in this case do not justify exclusion of the evidence that resulted from issuance of the GPS warrants. I am troubled by the fact that the GPS device at issue was authorized by warrants obtained in violation of Iowa law. However, because the violations were not deliberate, and did not result in prejudice, I must disregard law enforcement's ignorance of Iowa law and focus solely on whether the search violated Hansen's Fourth Amendment rights.

## II.    *Fourth Amendment Issues*

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. A vehicle is an "effect" as that term is used in the Amendment. *United States v. Chadwick*, 433 U.S. 1, 12 (1977). In *Jones,* the Supreme Court held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" 132 S. Ct. at 949 [footnote omitted]. In his majority opinion, Justice Scalia pointed out that by installing the device, "[t]he Government physically occupied private property for the purpose of obtaining information." *Id.*

*Jones* did not reach the issue of whether law enforcement's use of a GPS device without a warrant is presumptively unreasonable. *Id.* at 954. However, that issue is not implicated here because Radmaker obtained two search warrants authorizing installation and monitoring of the device. To satisfy the Fourth Amendment, the warrants must have (a) been issued by a neutral and detached judge; (b) contained a particular description of the place to be searched, and the persons or things to be

seized; and (c) been based "upon probable cause, supported by Oath or affirmation." *Dalia v. United States*, 441 U.S. 238, 255 (1979); U.S. Const. Amend. IV.

In contesting the warrants in this case, Hansen does not challenge the first two requirements.[5] He does, however, contend that the warrants were not based on probable cause. Probable cause exists if the affidavit in support of the search warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Warford,* 439 F.3d 836, 841 (8th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When reviewing the decision of the issuing judge, the court must determine if the issuing judge "had a substantial basis for … conclud[ing] that probable cause existed." *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003). If the issuing judge relied solely on the supporting affidavit to issue the warrant, then "only that information which is found within the four corners of the affidavit" may be considered in determining the existence of probable cause. *United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006) (citing *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)). However, the Fourth Amendment allows a judge issuing a search warrant "to consider sworn oral testimony supplementing a duly executed affidavit to determine whether there is probable cause upon which to issue a search warrant." *Frazier v. Roberts*, 441 F.2d 1224, 1226 (8th Cir. 1971) (citation omitted); *United States v. Berkus*, 428 F.2d 1148, 1150 (8th Cir. 1970) (The "substantive practicalities" of the Fourth Amendment allow a judge issuing a search warrant "to supplement the affidavit by sworn testimony of the officer.").

Probable cause is determined by considering the totality of the circumstances and the issuing judge's resolution of the question "should be paid great deference by

---

[5] As I will discuss in part III, *infra*, Hansen argues against applicability of the "good faith" exception to the exclusionary rule by alleging that the issuing judge "failed to act in a neutral and detached manner." He does not make this argument, however, in the section of his brief that challenges the warrants themselves. In any event, I find that the argument is baseless.

reviewing courts." *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)); *see also United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010); *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)).

"When the affidavit is based on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search." *Solomon*, 432 F.3d at 827. Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information or if it is corroborated by independent evidence. *Draper v. United States*, 358 U.S. 307, 313 (1959). If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable. *Gates*, 462 U.S. at 233-34. "Even the corroboration of minor, innocent details can suffice to establish probable cause." *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009) (quotation omitted).

Hansen argues that probable cause was lacking because the warrants were based on information provided by a confidential source and Radmaker's affidavits did not sufficiently demonstrate that source's reliability. Doc. No. 9-1 at 5-6. He further argues that Radmaker's affidavits did not reflect adequate independent corroboration of information establishing criminal activity. *Id.* The Government disagrees.

The Government first points out that according to the "Informant's Attachments" Radmaker supplied with his two affidavits, the informant was a "concerned citizen."

*See* Ex. 1 at 4; Ex. 2 at 4. The Government finds great significance in this characterization, noting that information provided by a private citizen is generally deemed more reliable than that provided by police informants who may, themselves, be involved in criminal conduct. Doc. No. 18-1 at 12 (citing *Edwards v. Cabrera*, 58 F.3d 290, 294 (7th Cir. 1995)). I reject the Government's argument on this point. First, the phrase "concerned citizen" in the "Informant's Attachment" appears to be a stock, pre-printed portion of a standard form. The form did not give Radmaker the option of choosing between "concerned citizen" and, for example, "alleged drug dealer providing information in exchange for a deal."

Second, while the Government's pre-hearing brief suggested that Radmaker would give testimony supporting the "concerned citizen" characterization, he did not. Thus, apart from the fact that the pre-printed form contains the words "concerned citizen," there is no evidence that Radmaker's informant was anyone other than a typical police informant who was engaged in, or at least in proximity to, criminal activity. The Government's attempt to inflate the informant's credibility based on the term "concerned citizen" is an unsupported reach.

Nonetheless, in considering the totality of the circumstances and the information Radmaker provided to the state magistrate, I find that probable cause supported issuance of the GPS warrants. According to those affidavits, the informant initially provided detailed information about an alleged, upcoming drug transaction. Ex. 1 at 8.[6] The details included the full name of the alleged buyer, the approximate price, the location of the anticipated transaction and information about the seller. *Id.* With regard to the seller, the informant stated that he would be coming from Minnesota, previously lived in Kossuth County, previously drove a white Dodge Durango and was recently released from prison. *Id.* The informant later provided more information, including the seller's first name (Ryan) and specific, after-the-fact information about the

---

[6] I am citing to Radmaker's affidavit in support of the first application. The same information was contained in his affidavit in support of the second application, as well.

actual transaction. *Id.* The informant told Radmaker what time the seller arrived and what he brought with him ("a large bag of Ice"). *Id.* The informant also stated that the seller was driving a white Chrysler 300 with 22-inch rims. *Id.*

Later, the informant told Radmaker that the seller had made contact with the informant and asked the informant "if he had any money for meth." *Id.* The informant then provided Radmaker with the seller's telephone number and forwarded a text message to Radmaker that, according to the informant, had originally been sent to the informant by the seller. *Id.* The text stated: "Well its been 2300 for an O so 9'bs for 2500." *Id.* In his affidavit, Radmaker stated that based on his training and experience, this text meant the seller would sell the informant an ounce of "Ice" for $2300 or nine "8balls" of "Ice" for $2500. *Id.* at 8-9.

Radmaker's affidavit stated that he utilized the informant's information to determine that Hansen was the seller. *Id.* at 9. Radmaker learned that Hansen is originally from Algona, had recently been released from prison and previously drove a white Dodge Durango. *Id.* Radmaker further learned that Hansen now drives a white 2007 Chrysler 300 with 22-inch rims and Iowa license plate number 478ZZC. Radmaker also learned from Misty Sweet with the Iowa Department of Corrections that on January 2, 2013, Hansen admitted to her that he had used methamphetamine and that he would not have a clean urinalysis test. *Id.*

In short, Radmaker did not rely solely on oral, uncorroborated information provided by a confidential source when he applied for the GPS warrants. He viewed a text message that appeared to propose a drug transaction and that, according to the informant, was sent by "Ryan." He confirmed the specific details provided by the informant about the seller and the seller's vehicle matched up with Hansen. And he confirmed from a specific, named source with the Iowa Department of Corrections that Hansen admitted to the recent use of methamphetamine. Radmaker presented all of this information to the state magistrate in both affidavits, along with additional details about the informant's credibility. He reported that the informant had been known to him for

one month (as of January 2013), was a "mature individual" with a "truthful reputation" and had no motive to falsify information. Ex. 1 at 4. He further stated that the informant had provided information in the past on five occasions and had not previously provided false information. *Id.*

Employing the standards discussed above, I find that the aggregation of this information provided the magistrate with "sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Warford*, 439 F.3d at 841 (quoting *Gates*, 462 U.S. at 238). Or, to be more precise under the circumstances of this case, I find that there was a fair probability that evidence of a crime would be found by installing the GPS device on Hansen's vehicle and monitoring it. Thus, probable cause supported the magistrate's issuance of the initial GPS warrant and the renewed GPS warrant. In light of this finding, I must recommend that Hansen's motion to suppress be denied.

### III. *Good Faith*

Because I have found that the GPS warrants were supported by probable cause, the Government's alternative argument that exclusion is inappropriate pursuant to *United States v. Leon* is moot. Nonetheless, because this is a Report and Recommendation, subject to the district court's *de novo* review, I will address that argument.

In *Leon*, the Supreme Court held that evidence gathered in violation of the Fourth Amendment is not automatically subject to exclusion. *United States v. Leon*, 468 U.S. 897, 922-23 (1984). The "*Leon* exception" provides that "the exclusionary rule should not be applied so as to bar the admission of 'evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate,' even if that search warrant is later held to be invalid." *United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011) (quoting *Leon*, 468 U.S. at 922-23). This

is because the exclusionary rule "is designed to deter police misconduct rather than punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. As the Eighth Circuit has explained: "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (internal quotation marks and citation omitted). This means, for example, that "[o]rdinarily, a police officer cannot be expected to question a judge's probable cause determination." *United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991).

The Government may not rely on the good-faith exception if one of four circumstances exist: (1) the issuing judge is misled by information in the affidavit the affiant knows or should know is false; (2) the issuing judge completely abandons his or her judicial role; (3) the affidavit includes so little indicia of probable cause that official belief in its existence is entirely unreasonable; or (4) the warrant is so facially deficient that the examining officer cannot reasonably presume it to be valid. *See, e.g., Grant*, 490 F.3d at 632. Hansen, in arguing that the *Leon* exception does not apply in this case, does nothing but recite three of these four circumstances. He states, with no explanation or argument: "(1) the issuing judge failed to act in a neutral and detached manner and/or (2) the warrant was so lacking in indicia of probable cause as to render official belief in it's [sic] existence entirely unreasonable, and/or (3) the warrant was so facially invalid that no reasonable officer could believe it to be valid." Doc. No. 9-1 at 7.[7]

I reject Hansen's conclusory allegations. While the issuing magistrate, like Radmaker, was apparently unfamiliar with Iowa Code § 808B.5(12), there is no evidence that he abandoned his role as a neutral, detached judicial officer. The fact that the magistrate added written, sworn information to the application by way of

---

[7] Hansen does not argue that the issuing magistrate was misled by false information. *Id.*

endorsement strongly suggests that he took his role seriously and did not simply "rubber stamp" the proposed warrant with no thought or consideration.

Moreover, even if my finding that probable cause supported the GPS warrants is incorrect, the existence of probable cause was not so clearly lacking as to make it unreasonable for law enforcement officers to believe that those warrants were valid. Nor were the warrants so obviously invalid on their face as to prevent a reasonable belief that they authorized placement and monitoring of the GPS device.

In short, I find that it was reasonable for Radmaker and Larson to rely on the GPS warrants, even if – in hindsight – there was a lack of probable cause to issue those warrants. Pursuant to *Leon*, exclusion is not an appropriate remedy.

## CONCLUSION

For the foregoing reasons, I find that evidence derived from the GPS warrants should not be suppressed and RESPECTFULLY RECOMMEND that Hansen's motion to suppress (Doc. No. 9) be **denied**. Objections to this Report and Recommendation must be filed by **July 3, 2013.** Responses to objections must be filed by **July 17, 2013.**

IMPORTANT NOTE: Any party planning to lodge an objection to this Report and Recommendation must order a transcript of the hearing promptly, but not later than **June 26, 2013**, <u>**regardless of whether the party believes a transcript is necessary to argue the objection**</u>. If an attorney files an objection without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 19th day of June, 2013.

LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE